UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Criminal Action No.: 7:17-cr-77 |
| KAYLEIGH M. BOWLES, | ) ) ) | By: Elizabeth K. Dillon<br>United States District Judge |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

On December 14, 2017, Kayleigh Bowles was charged in a two-count indictment with conspiracy to distribute heroin, the use of which resulted in death or serious bodily injury, and distribution of heroin, the use of which resulted in death or serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 21 U.S.C. § 846. (Dkt. No. 3.) Before the court is Bowles's motion to dismiss the indictment based on prosecutorial misconduct before the grand jury. (Mot. Dismiss Indictment, Dkt. No. 41.) The matter has been fully briefed, and the court heard testimony and argument at the hearing. For the reasons discussed herein, the court will deny the motion to dismiss the indictment.

## II. FACTUAL BACKGROUND

According to the government, Bowles sold heroin to G.P. at around 10:00 p.m. on June 16, 2016, a Thursday. G.P.'s girlfriend told law enforcement that G.P. went upstairs to use the heroin when they returned home. Around 4:30 a.m. the next morning, Friday, she found him unresponsive in the bathroom. He was declared dead at 6:21 a.m. on June 17, 2016. (*Id.* at 1–2.) The girlfriend also stated that she had not seen him use any other drugs or heroin that day and

that he appeared fine and not under the influence from the time they met to the time they went to bed. She indicated that he had not used any other controlled substances in the eight hours before his death. (Pl.'s Resp. to Def.'s Mot. Dismiss Indictment 4–5, Dkt. No. 54; Grand Jury Tr. 3, at 23, 27, Dkt. No. 60-2.) The autopsy showed that the cause of death was acute combined heroin and fentanyl toxicity. No drugs or paraphernalia were found at the scene. (Mot. Dismiss Indictment 2.) Drug Task Force Officer Aaron Durham testified before the grand jury. The Assistant United States Attorney asked Durham: "And has your investigation revealed that [G.P.] used any other heroin or drugs around the time that he died?" Durham responded: "No, it hasn't." (Grand Jury Tr. 19, Dkt. No. 60.) Bowles contends that this testimony was false because "law enforcement had downloaded G.P.'s phone shortly after his death and text messages to his girlfriend earlier on the same day state that he was at a hotel getting high." Bowles also notes that "other deleted text messages sent and received by G.P. on the evening prior to his death are suggestive of drug activity and other witnesses interviewed by law enforcement indicated G.P. had been using drugs in the days before his death." (Mot. Dismiss Indictment 2.)

Cell phone records and testimony, however, indicate that there was evidence that may point to other drug use. An interview with G.P.'s girlfriend indicated that she believed that G.P.'s sister had given him dilaudid the day before he died, but she was not sure. Testimony from Sergeant Alley revealed that the dilaudid incident occurred somewhere between Sunday and Tuesday afternoon before G.P.'s death on Friday. Additionally, deleted text messages between G.P. and his girlfriend, which were not mentioned by his girlfriend in interviews, indicated that G.P. told her that he was at a hotel getting high on Thursday. The text messages indicate a verbal fight between the two and show one text where G.P. denies that he got high.

Nonetheless, the messages are evidence of other possible drug use. Additionally, Durham and Alley also testified at the hearing about a series of text messages sent the evening before G.P.'s death from his phone regarding a drug transaction that was unrelated to Bowles. Both agreed that these messages revealed G.P. was somehow involved with drug transactions on that evening. However, both Durham and Alley believed that the messages referred to a marijuana transaction, and Durham testified that he did not feel the messages were relevant to his investigation surrounding the time of G.P.'s death. Again, though, the messages are evidence of other possible drug use. It appears, however, and Sergeant Alley confirmed, that the investigation did not reveal any evidence of a source for heroin or fentanyl—other than Bowles—that could have contributed to G.P.'s death in the view of the investigators.

Importantly, other witness testimonies in the grand jury proceeding strongly support the grand jury's indictment. For example, Durham testified that Bowles called G.P.'s girlfriend, who found G.P. right before she called the paramedics, and begged her not to tell the police that she gave heroin to him. (Grand Jury Tr. 19.) Additionally, the girlfriend testified that, at the time of G.P.'s death, he was overall sober and doing well, although he had used drugs a few times since he was released from prison in 2015. (Grand Jury Tr. 3, at 7, 10–11.) Another customer of Bowles testified that she purchased heroin from Bowles on June 16th—the same day G.P. allegedly purchased heroin from Bowles—and overdosed from that heroin. (Grand Jury Tr. 2, at 11, 16, Dkt. No. 60-1.) Similarly, another customer testified that the heroin she received from Bowles on June 16th caused her skin to break out in red blotches, which was the reaction she had experienced in the past when the heroin she used had fentanyl in it. (Grand Jury Tr. 5, at 24, Dkt. No. 60-4.)

III. DISCUSSION

Because the government must prove that the heroin Bowles distributed was the "but-for" cause of G.P.'s death for an enhanced sentence under 21 U.S.C. § 841(b)(1)(C), G.P.'s use of drugs from other sources is highly relevant. (Mot. Dismiss Indictment 2–3); *Burrage v. United States*, 571 U.S. 204, 218–19 (2014). Accordingly, Bowles asserts that the evidence of G.P.'s earlier drug use on the day he died demonstrates that there was another source of drugs that could have caused his fatal overdose. Bowles claims that the prosecutor essentially asked Durham to confirm that the only drugs G.P. used were from Bowles, "thus leading the grand jury to conclude that probable cause existed to believe Ms. Bowles distributed drugs that led to the death of G.P." She also posits that the prosecutor knew or should have known that Durham "was presenting materially misleading and flatly perjurious testimony." As such, Bowles contends that the court should have "grave doubt" that the grand jury's decision to indict was "free from the substantial influence of TFO Durham's misleading and false representations." (Mot. Dismiss Indictment 5.)

The government's argument is two-fold: First, Durham's statement is not false, and second, even if it were, it would not warrant dismissal of the indictment. The government contends that Bowles has not cited the basis for her claim or provided any definitive evidence that G.P. used drugs earlier in the day before he died that could have caused his death. Further, the government points out that the evidence before the grand jury "belie[s] a claim that drug use prior to 10 p.m. on July 16 caused G.P.'s death," given the girlfriend's statements that he was fine before they went to bed. The government also notes that it brought all salient witnesses with knowledge of the events before the grand jury, no witnesses discussed other drug use by G.P. that could have resulted in his death on July 17th, and some even testified that G.P. had been

4

clean for approximately two years. Thus, the government argues that Durham was truthful and accurate when he stated that his investigation showed G.P. did not use any other drugs or heroin at approximately the time he died, other than the heroin provided by Bowles. (Pl.'s Resp. to Def.'s Mot. Dismiss Indictment 4–5.)

The government then asserts that even if Durham's statement had been false, Bowles did not face actual prejudice sufficient to warrant dismissal of her indictment. In support of its argument, the government highlights portions of the grand jury testimony regarding Bowles and regarding a lack of evidence of any other source or use of heroin or fentanyl. Additionally, it notes that the medical examiner opined "combined fentanyl and heroin toxicity" caused G.P.'s death. Considering this evidence, the government posits that Bowles cannot show Durham's statement "substantially influenced the grand jury's decision to indict, or that there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." (*Id.* at 6–7.)

Under the Fifth Amendment, "[a]n indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). "Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989).

Generally, district courts "may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *see United States v. Feurtado*, 191 F.3d 420, 424 (4th Cir. 1999) ("The Supreme Court set the standard for dismissal of indictments in *Bank of Nova Scotia* . . .

5

which held that a defendant is entitled to dismissal of an indictment only where actual prejudice is established."). For nonconstitutional error, the harmless error analysis applies, and dismissal of an indictment "is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Novia Scotia*, 487 U.S. at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)); *see United States v. Mills*, 995 F.2d 480, 487 (4th Cir. 1993).

Prosecutorial misconduct must affect substantial rights for the court to "review either the competency or sufficiency of evidence which forms the basis of an indictment," or to quash the indictment. *Mills*, 995 F.2d at 487. The Fourth Circuit has indicated that dismissal of an indictment due to prosecutorial misconduct that has prejudiced a defendant is seldom an appropriate remedy. *United States v. Bonsu*, 291 F. App'x 505, 510–11 (4th Cir. 2008) (citing *United States v. Derrick*, 163 F.3d 799, 807 (4th Cir. 1998)). The court may not dismiss an indictment "for prosecutorial misconduct absent a showing that the misconduct prejudiced the defendant," *Derrick*, 163 F.3d at 807, and "even when a court finds such prejudice, dismissal of the indictment does not necessarily follow as a remedy," *United States v. Dyess*, 478 F.3d 224, 236 (4th Cir. 2007). Dismissing an indictment "is only appropriate where even a new trial would be an insufficient remedy." *Bonsu*, 291 F. App'x at 505 (citing *Derrick*, 163 F.3d at 807).

Applying the above principles to this case, the court concludes that there is no basis for the court to grant dismissal of the indictment.

First, the court does not find that Durham's testimony was false. Certainly, the answer was inartful given the question. Durham, however, confined his answer to use of drugs found to have caused death around the hours immediately proceeding the time of death. The question,

6

however, was not that narrow. There, indeed, was some evidence of possible other drug use in the days before G.P.'s death. Durham's testimony, however, was not "materially misleading and flatly perjurious." (Mot. Dismiss Indictment 2, 5.) While Bowles may question the weight that the testimony should be given and the specific parameters and scope of the testimony, there was no evidence presented indicating that G.P. had another source of heroin/fentanyl other than Bowles. The substance of the testimony in context, then, was not false.

Nonetheless, even if Durham's grand jury testimony was false, that falsity is insufficient to raise a substantial question, much less a grave doubt, as to whether it had a substantial effect on the jury's decision to indict Bowles. The testimonies from various witnesses establish that, under the harmless error analysis, it is unlikely Durham's testimony actually prejudiced Bowles. When Durham's statement is considered together with all the other testimony that indicates Bowles provided the heroin that caused G.P.'s overdose, Durham's statement could not have "substantially influenced the grand jury's decision to indict" and does not cast "'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Novia Scotia*, 487 U.S. at 256 (quoting *Mechanik*, 475 U.S. at 78). The grand jury heard other testimony that would reasonably result in an indictment, regardless of the influence of Durham's statement. Because Bowles was not prejudiced by this statement, and because the Fourth Circuit is reluctant to dismiss an indictment due to prosecutorial misconduct, dismissal of the indictment is not appropriate here. *Bonsu*, 291 F. App'x at 510–11.

### III. CONCLUSION

For the foregoing reasons, the court hereby ORDERS that defendant's motion to dismiss the indictment is DENIED.

The clerk is directed to provide a copy of this memorandum opinion and order to all counsel of record.

Entered: January 28, 2019

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge